## THE MAX MORRIS.[1]

### CURRY v. THE MAX MORRIS.

*(Circuit Court, S. D. New York. August 4, 1886.)*

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PERSONAL INJURIES—RULE IN ADMIRALTY—APPORTIONMENT OF DAMAGES.

> In suits in admiralty for personal injuries, contributory negligence on the part of the libelant is not a bar to his recovery. The admiralty rule, apportioning damages when both parties are at fault, extends to all cases of maritime tort occasioned by concurring negligence.[2]

Appeal from the District Court for the Southern District of New York. Reported 24 Fed. Rep. 860.

The libelant, while employed as a laborer on ship-board, sustained personal injuries for which he attached the vessel. The district court held that the accident was in part caused by his own negligence, and apportioned the damages.

*R. B. Martine*, for libelant and respondent.

*Butler, Stillman & Hubbard*, for claimant and appellant.

WALLACE, J. The libelant, while engaged as a laborer upon the steamer, fell through an unguarded opening at a place at which he supposed there was a ladder, and was hurt. The district court decided that the accident was attributable to the concurring negligence of both parties, and apportioned the damages to the libelant by allowing him compensation for his immediate pecuniary loss in time and wages, and disallowing him for his pain and suffering or other consequential damages. The case has been brought here on appeal to determine the question whether the rule of admiralty for apportioning damages in collision is to be extended to ordinary actions for personal injuries sustained on board vessels by laborers, seamen, pas-

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.
[2] See note at end of case.

sengers, or others by reason of the concurring negligence of the party injured, and those for whose conduct the ship is responsible, or whether the rule of the municipal law is to prevail, which denies a recovery to a party when his own negligence has contributed to produce the injury.

If the rule which was adopted by the learned judge of the district court could be sanctioned and applied generally in actions of the character of this, it could be flexibly adjusted to the equitable considerations of each case, and would thus enable a fair distribution of the loss resulting from the mutual fault of parties to be made. But the court cannot be controlled by this consideration. The question is not whether it would be convenient or salutary to adopt a new rule of responsibility or damages in actions other than those for a collision, but whether such a rule already exists, and may therefore be applied. In the language of Lord KENYON: "I cannot legislate, but by industry I can discover what our predecessors have done, and I will tread in their footsteps." Although it has been said that "in cases of marine torts courts of admiralty are in the habit of giving or withholding damages upon enlarged principles of justice and equity, and have not circumscribed themselves within the positive boundaries of mere municipal law," and that "they have exercised a conscientious discretion upon the subject," (STORY, J., in *The Marianna Flora*, 11 Wheat. 1,) these observations do not imply that such courts do not proceed upon settled rules equally with courts of equity or of common law. The most certain evidence of these rules is to be found in the reports of their decisions. If these fail to denote the recognition of a principle or the application of a rule which is invoked in the case in hand, and the facts are not new, but are similar in substance to those which have frequently been the subject of judicial treatment, the absence of authority is pursuasive evidence that no such principle or rule exists.

No authority is found for the rule of apportioning damages in cases of mutual fault, except in causes of collision, negligent navigation, and possibly of prize, in the decisions or in the text-books earlier than the recent case of *The Explorer*, 20 Fed. Rep. 135. The learned judge who decided that case concedes that he had not been able to find "that, outside of collision and prize cases, the admiralty courts have claimed or exercised a different rule, as to cases of contributory, concurrent, or comparative negligence, from that applied generally in courts of law and equity in cases of damage and torts suffered on land." On the other hand, it has been repeatedly decided, directly or by implication, prior to the present case, by the district courts in this circuit, that, when the negligence of the party injured contributed to produce the injury, he could not recover. In *The Germania*, 9 Ben. 356, BLATCHFORD, J., stated the rule as follows:

"The owner of the vessel is liable *in personam*, and the vessel is liable *in rem*, for injuries done to person or property by the negligence of the master

and crew of the vessel, only where the owner would, under the same circumstances, be liable in a suit at common law."

This was also assumed to be the rule by BENEDICT, J., in *The Calista Hawes*, 14 Fed. Rep. 493. The members of the profession in this circuit have hitherto acquiesced in these decisions, and the circuit court, until now, has never been called upon to question their correctness by an appeal. In *The Rheola*, 19 Fed. Rep. 926, it was also assumed by the circuit judge to be the rule that the libelant could not recover for personal injuries if his negligence had contributed to produce them. That this has been the understanding of the law in other circuits is manifest by the opinions of DEADY, J., in *The Chandos*, 4 Fed. Rep. 645, and in *Holmes v. Oregon R. Co.*, 5 Fed. Rep. 523, and by the opinion of HUGHES, J., in *The Manhasset*, 19 Fed. Rep. 430. See, also, Henry, Adm. § 77.

The rule of admiralty in collisions, apportioning the loss in case of mutual fault, is peculiar to the maritime law. It is not derived from the civil law, which agrees with the common law in not allowing a party to recover for the negligence of another where his own fault has contributed to the injury. Whart. Neg. § 300. It emanated from the ancient maritime codes, and the reasons which are assigned by commentators as commending it are various and divergent. According to Clierac, (1 Bell, Comm. 5th Ed. 581,) "this rule of division is a rustic sort of determination, and such as arbiters and amicable compromisers of disputes commonly follow where they cannot discover the motives of the parties, or when they see fault on both sides." He thought its object was to prevent owners of old and worthless ships from getting them run down on purpose, in order to found a claim for excessive damages. Mr. Bell defends the rule upon expediency, "because," he says, "there appears to be no sufficient protection, without some such rule, for weak ships against stronger and larger ships, the masters and crews of which will undoubtedly be more careless when they know that there is little risk of detection, and none at all of direct damage to their vessel by which a smaller ship may be run down without any injury to the assailant." Lord DENMAN, in *Devaux v. Salvador*, 4 Adol. & E. 420, says: "It grows out of an arbitrary provision in the law of nations, from views of general expediency, not as dictated from natural justice, nor, possibly, quite consistent with it."

By the laws of most of the maritime states the rule was applied indiscriminately in collisions when both vessels were to blame, when neither was to blame, and when the blame could not be detected. Abb. Shipp. 229. In a recent article in the Law Quarterly Review, (July, 1886, vol. 2, p. 362,) Mr. Marsden traces the history of the recognition of the general maritime law on this subject by the English admiralty courts, and shows that in the earlier cases the rule of division of loss was applied when there was no fault in either ship, and when the cause of collision was uncertain, as well as in cases

when both ships were in fault. Since *The Woodrop Sims*, 2 Dods. 83, the rule has only been applied in the case of both ships in fault; and, as thus applied, is now adopted as part of the general municipal law of England by the judicature act of 1873.

In our own courts it may still be regarded, perhaps, as an open question whether apportionment is the rule where the fault is inscrutable, as well as when both vessels are in fault, or whether only when both vessels are in fault. *The Grace Girdler*, 7 Wall. 196; *The John Henry*, 3 Ware, 264; *The David Dows*, 16 Fed. Rep. 154; *The Comet*, 1 Abb. 451; *The Breeze*, 6 Ben. 14; *The Summit*, 2 Curt. 150.

If no trace is to be found of any doctrine of liability or rule of damages in cases of marine torts which is peculiar to the admiralty, except that which obtains in cases of collision, and has exclusive reference to the conduct of ships towards each other, and the faults or accidents incident to their navigation, resort may be had to the principles or analogies of the common law or of the civil law when a new question arises; and it has also been said that local statutes or general statutes, not obligatory upon courts of admiralty, furnish a rule of decision. *The Highland Light*, Chase, Dec. 150; *Steam-boat* v. *Phœbus*, 11 Pet. 175; *Steam-boat Co.* v. *Chase*, 16 Wall. 531; *Cutting* v. *Seabury*, 1 Spr. 522; *The Lottawanna*, 21 Wall. 558. Ordinarily, to determine the right and remedies of parties for marine torts the courts recur to the rules of the common law to ascertain what acts are marine torts. *Peterson* v. *Watson*, Blatchf. & H. 487. In the language of the decisions, marine torts are said to embrace wrongs committed by direct force, and those suffered in consequence of the negligence or malfeasance of others, "where the remedy at common law is by an action on the case." *Philadelphia, W. & B. R. Co.* v. *Philadelphia, etc., Steam Tow-boat Co.*, 23 How. 216; *Leathers* v. *Blessing*, 105 U. S. 630.

As has been stated, both the common law and the civil law agree in denying a right of recovery for negligence when the negligence of the party injured has concurred in producing the injury. The reason for the rule is sometimes said to be based upon grounds of public policy, which require, in the interest of the whole community, that every one shall take such care of himself as can reasonably be expected; but the reason more commonly assigned why contributory negligence is never considered in mitigation of damages, but is deemed a complete defense, is because "the law has no scales to determine, in such cases, whose wrong-doing weighed most in the compound that occasioned the mischief." *Railroad Co.* v. *Norton*, 24 Pa. St. 469; *Greenland* v. *Chaplin*, 5 Exch. 243, 247; *Wilds* v. *Hudson River R. Co.*, 24 N. Y. 432. The language of STRONG, J., in *Heil* v. *Glanding*, 42 Pa. St. 493, 499, is as follows:

"The reason why, in cases of mutual concurring negligence, neither party can maintain an action against the other, is not that the wrong of the one is set off against the wrong of the other; it is that the law cannot measure how

much the damage suffered is attributable to the plaintiff's own fault. If he were allowed to recover, it might be that he would obtain from the other party compensation for his own misconduct."

It would seem that either of the reasons assigned should be as controlling with a court of admiralty as in a court of common law. It is also to be observed that the rule relates to the cause of action, and denies any right of recovery, and is not one of damages for ascertaining what measure of compensation should be awarded.

The question presented by this appeal is both novel and interesting. Cases similar to this are now frequently brought in the district courts, but those in which the amount involved is sufficient to enable an appeal to be brought from this court to the supreme court are very rare; and it follows that the decisions of the circuit courts must be accepted as final, and as definitely determining the law of such cases for probably many years. The judgment of the circuit court in the case of *The Explorer* is embodied in a carefully considered opinion, and is entitled to great weight in this court. But whatever doubts might be entertained of its correctness, or of the duty of this court to yield to its authority as the judgment of a court of co-ordinate jurisdiction, pronounced after full consideration by a judge whose opinions always command the highest respect, have been removed by a decision of the supreme court which seems to have been overlooked by counsel, as well as by the judges who have hitherto considered the question involved. In *Atlee* v. *Packet Co.*, 21 Wall. 389, there was an appeal in admiralty from a decree of the circuit court of the district of Iowa awarding damages to the owners of a barge which was injured by being run against a stone pier built by the respondent in a navigable part of the Mississippi river. The circuit court decided that the pier was an unlawful obstruction, and decreed for the whole damages sustained by the libelant; but the supreme court, although agreeing that the pier was an unlawful structure, and that the respondent was liable, decided that the pilot of the barge was guilty of negligence for want of knowledge of the pier, and for hugging the shore, when, by proceeding further out in deep water, his vessel would have been safe; and reversed the decree below by dividing the damages. The question whether damages should be divided in such cases was considered and disposed of; Mr. Justice MILLER delivering the opinion of the court in the following language:

"But the plaintiff has elected to bring his suit in an admiralty court, which has jurisdiction of the case, notwithstanding the concurrent right to sue at law. In this court the course of proceeding is in many respects different, and the rules of decision are different. The mode of pleading is different, the proceeding more summary and informal, and neither party has a right to trial by jury. An important difference as regards this case is the rule for estimating the damages. In the common-law court the defendant must pay all the damages or none. If there has been, on the part of plaintiff, such carelessness or want of skill as the common law would esteem to be contributory negligence, they can recover nothing. By the rule of the admiralty court,

where there has been such contributory negligence, or, in other words, when both have been in fault, the entire damages resulting from the collision must be equally divided between the parties. This rule of the admiralty commends itself quite as favorably, in its influence in securing practical justice, as the other; and the plaintiff, who has the selection of the forum in which he will litigate, cannot complain of the rule of that forum. It is not intended to say that the principles which determine the existence of mutual fault, on which the damages are divided in admiralty, are precisely the same as those which establish contributory negligence at law that would defeat the action. Each court has its own set of rules for determining these questions, which may be in some respects the same, but in others vary materially."

Upon these views of the law, the collision rule for dividing damages can no longer be considered as applicable only to cases involving the rights and responsibilities of parties for colliding vessels. The principles enunciated apply to all cases of marine tort founded upon negligence, without regard to any peculiar considerations of maritime policy for regulating the conduct of ships towards each other, or to any exceptional rules of practice adopted by the admiralty courts because of the intrinsic difficulty in collision cases of locating the fault, or the cause of the disaster. This decision covers the whole ground, and fully sustains the ruling in *The Explorer* and in the district court.

The decree of the district court is affirmed.

NOTE.

NEGLIGENCE—CONTRIBUTORY—RULE IN ADMIRALTY. The rule that contributory negligence prevents a recovery is not applicable in admiralty, The Wanderer, 20 Fed. Rep. 140; The Explorer, Id. 135; The David Dows, 16 Fed. Rep. 154; The James M. Thompson, 12 Fed. Rep. 189; The Garland, 5 Fed. Rep. 924; and will not cause the denial of relief to one whose negligence may have contributed to his injury, The Mabel Comeaux, 24 Fed. Rep. 490; The Garland, 5 Fed. Rep. 924.

Where a collision is owing to the negligence of two vessels, even though in unequal degrees, the fault should not fall wholly on one, The Pegasus, 19 Fed. Rep. 46; The Franconia, 16 Fed. Rep. 149; The David Dows, Id. 154; Memphis & St. L. P. Co. v. H. C. Yaeger Transp. Co., 10 Fed. Rep. 395; The Monticello, 15 Fed. Rep. 474; and the damages will be apportioned according to the disparity or fault, The F. I. Merryman, 27 Fed. Rep. 313; The Columbia, Id. 238; The Mary Ida, 20 Fed. Rep. 741; The Syracuse, 18 Fed. Rep. 828; The B. & C., Id. 543; The M. J. Cummings, Id. 178; The Jeremiah Godfrey, 17 Fed. Rep. 738; The Wm. Murtagh, Id. 259; S. C. 3 Fed. Rep. 404; Christian v. Van Tassel, 12 Fed. Rep. 884; The Roman, Id. 219; Connolly v. Ross, 11 Fed. 342; The Ant, 10 Fed. Rep. 294; The William Cox, 9 Fed. Rep. 672; S. C. 3 Fed. Rep. 645; The Farnley, 8 Fed. Rep. 629; but where a plaintiff so far contributes to the injury by his own negligence or want of ordinary care and caution that but for that negligence or want of care the injury would not have happened, he is not entitled to recover, The E. B. Ward, 20 Fed. Rep. 702; The Carl, 18 Fed. Rep. 655; Sunney v. Holt, 15 Fed. Rep. 880.